**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ERIKSEN CONSTRUCTION COMPANY,
INCORPORATED, a Nebraska
corporation,
<u>Plaintiff-Appellee,</u>

v.

NICHOLAS MOREY, JR., individually
and d/b/a Contractors Equipment
Company, d/b/a Contractors Quality
Cranes,
<u>Defendant-Appellant.</u>

No. 96-1491

Appeal from the United States District Court
for the Southern District of West Virginia, at Parkersburg.
Charles H. Haden II, Chief District Judge.
(CA-95-190-6)

Argued: May 6, 1997

Decided: November 19, 1997

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
STAMP, Chief United States District Judge for the
Northern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** C. Page Hamrick, III, Charleston, West Virginia, for
Appellant. John Philip Melick, JACKSON & KELLY, Charleston,
West Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendant-appellant Nicholas Morey, Jr., individually and d/b/a
Contractors Equipment Company and Contractors Quality Cranes
("Morey"), seeks review of the district court's order denying his post-
trial motions for judgment as a matter of law, for new trial, and to
amend judgment. On appeal, Morey alleges that the district court
erred in denying his motions for judgment as a matter of law on the
issues of fraud, punitive damages, express warranty, implied warranty
of merchantability and damages. Further, Morey alleges that the dis-
trict court erred in giving the proposed jury instructions of plaintiff-
appellee Eriksen Construction Company, Incorporated ("Eriksen") on
the issues of fraud and punitive damages, by giving Eriksen's pro-
posed jury instruction on the issue of express warranty, and by allow-
ing the jury to consider theories of recovery other than that of implied
warranty of fitness of purpose. Because we find error neither in the
district court's denial of Morey's motions for judgment as a matter of
law nor in the district court's instruction of the jury, and because we
find no other errors in the trial, we affirm.

I.

Plaintiff-appellee Eriksen, a Nebraska corporation, is a general
contractor engaged in the business of building churches, schools and
sewage and wastewater treatment facilities. Defendant-appellant
Morey of Parkersburg, West Virginia is engaged in the business of
buying and selling used cranes and other heavy equipment. In 1994,
John Eriksen, the President of Eriksen Construction, contacted Morey
by telephone in response to a notice in a trade magazine, advertising
a large crawler crane which Morey had for sale. The crane which
Morey was offering for sale was a P&H 670 crane which Morey had
purchased from the Meade Paper Company in January 1994 and
which had been built in the late 1960s. The advertisement to which

2

Mr. Eriksen referred when he contacted Morey indicated that sale of the crane would include 150 feet of basic boom, a 50 foot jib section, a Cummings engine and expandable tracks.

During their first telephone conversation, Morey told Mr. Eriksen that he had available for purchase a crane built in the 1960s. Mr. Eriksen responded that he was interested only in a newer crane. Morey responded, in return, that he had another crane, a P&H 670, which he had recently purchased from Meade Paper Company and which had been built in the 1970s. Mr. Eriksen arranged to have his mechanic, Roger Ward, travel from Nebraska to West Virginia to inspect the P&H 670 crane.

While at Morey's business, Ward attempted to inspect the P&H 670 crane. Ward testified that, at the time of his visit, the crane was inoperable, because it had no cab and the radiator had been removed. At trial, Morey testified that the P&H 670 crane did operate and that Morey and Ward ran it and moved it several feet backwards and forwards. While in West Virginia, Ward also visited Morey's paint shop to view the crane's boom and jib which were being sandblasted and painted. After Ward's visit, Morey and Eriksen negotiated a price for the crane as well as a price for a second crane which Eriksen was to buy. As part of the negotiated agreement between Morey and Eriksen, Morey agreed to fix, before delivery of the crane to Eriksen, those items on the P&H 670 crane that were on a list created by Ward.

On April 28, 1994, Morey advised Eriksen in writing that the cranes were ready for shipment and that all of the repair items to which Ward and Morey had agreed had been completed. The following day, Eriksen paid the balance of the price of the crane to Morey by wire transfer.* Upon receipt of full payment, Morey sent Eriksen

_____

*Purchase of equipment between Eriksen and Morey also involved another crane, a link belt HSP. Eriksen made no claims in regard to this second crane. As part of the agreement between Morey and Eriksen, Eriksen traded in a Grove crane for which it received $25,000.00 credit towards the purchase of the link belt HSP and the P&H 670. Eriksen had made a $10,000.00 down payment on April 12, 1994 and had paid the balance due, $140,000.00, on April 29, 1994.

a bill of sale, which specified that the sale was "as is, where is, with all faults."

Eriksen accepted delivery of the crane on June 2, 1994 in Nebraska. Upon delivery, several deficiencies immediately became apparent. The crane could be removed from the delivery trailer only with great difficulty and the arm of the crane would not swing. Further, the radiator which had been removed when Ward viewed the crane in Parkersburg had been replaced with a radiator from a truck and was installed by removing a portion of the crane's frame and adding a length of hose. Upon discovery of these defects, Eriksen contacted Morey and communicated the defects to him. As part of the agreement between Eriksen and Morey, Eriksen was to use a crane which it already owned as a trade in on the two cranes which it purchased from Morey. After noting the problems with the P&H 670 crane that had just been delivered, Eriksen was reluctant to release the trade-in crane until the problems with the P&H 670 were remedied. However, after Morey assured Eriksen that if Roger Ward was not able to correct the problems with the P&H 670 Morey would come personally to fix the P&H 670 crane, Eriksen released the trade-in crane to Morey's delivery driver. On June 16, 1994, Eriksen advised Morey in writing of the deficiencies in the P&H 670 crane. Some of these deficiencies had already been corrected by Eriksen in an effort to mitigate damages. In that same letter, Mr. Eriksen demanded that Morey advise him by June 20, 1994 of plans to correct deficiencies in the crane. Morey subsequently planned a trip to Nebraska but later canceled the trip. Ultimately, Eriksen made the repairs to the P&H 670 crane and documented the cost of these repairs with receipts totaling $60,487.20.

Following these events, Eriksen filed suit against Morey in the District Court of Washington County, Nebraska. Morey removed this action to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction. In March 1995, this action was transferred from the United States District Court for the District of Nebraska to the United States District Court for the Southern District of West Virginia where a jury trial was held. At the close of Eriksen's case, Morey moved for judgment as a matter of law on the issues of breach of warranty, damages, fraud, and punitive damages. All of these motions were denied by the district court.

The jury returned a verdict for Eriksen and against Morey, awarding compensatory damages in the amount of $60,487.20 and punitive damages in the amount of $66,000.00. The trial court also entered its judgment on the special jury verdicts rendered by the jury. The defendant then filed a motion for judgment as a matter of law or in the alternative for a new trial or in the alternative to amend judgment by granting a decrease in damages. These motions were denied by the trial court. The court then entered an order granting Eriksen's motion for pre-judgment interest and its motion for attorney's fees and costs. Similarly, the district court entered its amended judgment on special jury verdicts granting judgment against defendant Morey and in favor of plaintiff Eriksen.

II.

We turn first to Eriksen's argument that the district court erred in denying its motion for judgment as a matter of law on the issues of fraud and punitive damages. The district court's denial of a motion for judgment as a matter of law is reviewed de novo . Brown v. CSX Transportation, Inc., 18 F.3d 245, 248 (4th Cir. 1994). The district court may grant a motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the opposing party] on that issue . . . ." F.R.C.P. 50(a). "To grant the motion the district court must examine the evidence in the light most favorable to the non-moving party and determine`whether a reasonable trier of fact could draw only one conclusion from the evidence.'" GSM Dealer Servs., Inc. v. Chrysler Corp., 32 F.3d 139, 142 (4th Cir. 1994) (citing Townley v. Norfolk & W. Ry., 887 F.2d 498, 499 (4th Cir. 1989)). In reviewing a district court's decision on a motion for judgment as a matter of law, this court neither weighs the evidence nor judges the credibility of the witnesses. Id. at 142.

Because this action is brought pursuant to federal diversity jurisdiction, the law of the forum state applies. Under West Virginia law, the plaintiff must prove the following elements by clear and convincing evidence to establish a cause of action for fraud:"(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that [the act] was material and false; that the plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." Schultz v.

5

Consolidation Coal Co., 475 S.E.2d 467, 471 (W. Va. 1996). Morey contends that Eriksen's entire fraud theory of recovery was based on the testimony of a Nebraska banker who was to provide financing for Eriksen's purchase of the crane. At trial, the banker testified that a representative of Contractors Equipment Company (Morey's business) told him that the serial number of the crane in question was 35008, while at trial the parties stipulated that the serial number of the crane was 30003. Morey contends that because this misrepresentation occurred after the sale of the crane in question, it cannot constitute fraud because Eriksen could not have relied on that information in entering into the contract. In contrast, Eriksen contends that at trial it presented ample evidence that Morey committed fraud before, during and after the formation of the contract for the sale of the P&H 670 crane. Eriksen presented evidence that Morey told Eriksen that the crane would be in excellent condition before it was shipped, but, that when it arrived, the crane was nearly inoperable. Further, Eriksen presented evidence that Morey convinced Mr. Eriksen to send the trade-in crane back with Morey's delivery person before the deficiencies in the P&H 670 were corrected and subsequently failed to remedy these deficiencies.

Reviewing the evidence in the light most favorable to Eriksen, we find that Eriksen did present sufficient evidence for a reasonable jury to find for Eriksen on the issue of fraud. Thus, we find no error in the district court's denial of the motion for judgment as a matter of law on the issue of fraud.

As noted above, Morey also moved for judgment as a matter of law on the issue of punitive damages. Morey argues that because, as he alleges, Eriksen failed to prove fraud, an award of punitive damages is precluded. Thus, Morey contends that he was entitled to judgment as a matter of law on the issue of punitive damages. However, the same evidence which we have found to be legally sufficient for a reasonable jury to find for Eriksen on the issue of fraud is also sufficient to support the district court's submission of the question of whether to award punitive damages to the jury. See Winant v. Bostic, 5 F.3d 767 (4th Cir. 1993); Vandevender v. Sheetz, Inc. , No. 23463, 1997 WL 384655, at *9 (W. Va. July 11, 1997) ("[W]here gross fraud . . . appear[s] . . . the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous.") (citations omitted). Thus,

6

we find no error in the district court's denial of Morey's motion for judgment as a matter of law on the issue of punitive damages.

In addition to the error which Morey assigns to the district court's denial of his motions for judgment as a matter of law on the issues of fraud and punitive damages, he contends that the district court erred in giving Eriksen's proposed instructions 13 through 21 on these issues. Morey contends first that it was error for the district court to instruct the jury on the issues of fraud and punitive damages for Eriksen's failure to make out a prima facie case on these issues. This argument is rendered moot by our decision on the motions for judgment as a matter of law on these issues above. In addition, Morey contends, more specifically, that the district court erred in giving Eriksen's instructions numbered 14, 17, 19 and 21. Morey argues that Eriksen's instruction 14, which provided that "if a person induces someone to enter into a contract by false representations which he knows or should know are untrue, the statements are considered fraudulent, and the defrauded person may pursue damages for any losses sustained," improperly shifted the burden of proof on the issue of fraud from Eriksen to Morey. Morey contends that Eriksen's instruction number 17, which refers to "concealed or latent conditions" is inaccurate in that it refers to "conditions" and not to "defects" and also that it fails to instruct that these latent defects must be material and substantial. As to Eriksen's instruction number 19, Morey contends that the district court erred in giving that instruction because Eriksen failed to present evidence that its alleged damages arose from any specific and material misrepresentation of Morey. Finally, as to Eriksen's instruction number 21, Morey repeats his argument that Eriksen should not have been entitled to an instruction on punitive damages for his failure to present a prima facie case on the same.

Generally, we will reverse an erroneous instruction only if the error was prejudicial, when viewed in light of the record as a whole. Hartsell v. Duplex Products, Inc., No. 97-1114, 1997 WL 501220 (4th Cir. August 25, 1997) (citing Ross v. St. Augustine's College, 103 F.3d 338, 344 (4th Cir. 1996)). When considered under this standard, Morey's challenges to the adequacy and appropriateness of the jury charge are without merit. Accordingly, we reject Morey's challenges to the jury instructions on the issues of fraud and punitive damages

7

and find no error in the district court's inclusion of the challenged instructions.

III.

Morey next argues that the district court erred in denying his motion for judgment as a matter of law on the issues of express warranty and implied warranty of merchantability. Morey argues that the only evidence presented by Eriksen of an express warranty was the list of items created by Eriksen's employee, Roger Ward, which delineated the items to be remedied on the P&H 670 crane prior to its delivery to Eriksen. Morey contends that these items of repair were merely "maintenance items" and not inconsistent with the age of the crane. However, as Eriksen points out in its brief, under West Virginia law "[w]here a seller promises to pay for repairs to goods delivered to the buyer in a defective condition and the buyer accepts the defective goods in reliance upon the promise to repair, such promises of the seller constitute express warranties." Mountaineer Contractors, Inc. v. Mountain State Mack, Inc., 268 S.E.2d 886, 892 (W. Va. 1980). Here, substantial evidence was presented as to the list of repairs to be made to the P&H 670 crane, the condition in which the crane was delivered to Eriksen and Eriksen's reliance on the promises made by Morey's delivery person and by Morey as to the remedy for these defects to suggest that Morey had made an express warranty in the sale of the P&H 670 crane. Thus, when viewed in the light most favorable to Eriksen, it was reasonable for a jury to determine that an express warranty had been made as to the sale of the P&H 670 crane. Therefore, we find no error in the district court's denial of Morey's motion for judgment as a matter of law on the issue of express warranty.

Morey further contends that the district court erred in denying his motion for judgment as a matter of law on the issue of implied warranty of merchantability. In support of this contention, Morey argues that Eriksen presented evidence only on the issue of implied warranty of fitness of purpose and not on the issue of implied warranty of merchantability. As Eriksen points out, however, Morey's admission that he was a crane "merchant" triggers W. Va. Code§ 46-2-314 which provides for an implied warranty of merchantability which, in turn, requires that goods sold be "fit for the ordinary purposes for which

8

such goods are used." W. Va. Code § 46-2-314(2)(c) (1993 Repl. Vol.). At trial, substantial evidence was presented on the issue of the deficiencies of the P&H 670 crane at the time of its delivery to Eriksen. When viewed in the light most favorable to Eriksen, a reasonable jury could find for Eriksen on the theory of implied warranty of merchantability. Thus, the district court did not err in denying Morey's motion for judgment as a matter of law on the issue of implied warranty.

Morey further contends that the district court erred in permitting the jury to consider any theory of recovery other than that of implied warranty of fitness of purpose. This argument is moot by virtue of our decisions as to Morey's motions for judgment as a matter of law on the issues of express warranty and implied warranty of merchantability.

Finally, Morey contends that the district court erred in giving Eriksen's proposed instruction number 7. Morey contends that this instruction incorrectly instructed the jury that any statements made by Morey to Eriksen which related to the P&H 670 crane created an express warranty. However, Eriksen's instruction number 7 also provided that the promise or factual assertion made by Morey must become "a basis for their bargain." The inclusion of this language is consistent with the language of W. Va. Code § 46-2-313(b) which provides that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty. . . ." W. Va. Code § 46-2-313(b) (1993 Repl. Vol.). When reviewed in light of the record in this matter as a whole, we conclude that the inclusion of Eriksen's instruction number 7 was not prejudicial to Morey and that the district court did not err in including that instruction in its jury charge.

IV.

Finally, Morey argues that the district court erred in denying his motion for judgment as a matter of law on the issue of damages. Morey contends that Eriksen failed to present evidence as to the specific costs of the allegedly missing twenty feet of boom or car body jacks, the decrease in fair market value of the crane due to the missing twenty feet of boom or car body jacks or costs incurred by Eriksen

9

for the missing boom or car body jacks. Eriksen countered this argument by obtaining quotes for the same from established dealers. As Eriksen points out, W. Va. Code § 46-2-714(1) provides that damages resulting from a seller's breach may be "determined in any manner which is reasonable." We find that the manner in which Eriksen determined the damages for the missing portion of boom and car body jacks was reasonable within the meaning of the statute. Thus, when viewed in the light most favorable to Eriksen, we find that a reasonable jury could find for Eriksen on the issue of damages on the basis of the evidence which Eriksen presented. Therefore, the district court did not err in denying Morey's motion for judgment as a matter of law on the issue of damages.

Accordingly, we find that the district court did not err in denying Morey's motions for judgment as a matter of law. We also conclude that the district court did not err in instructing the jury.

AFFIRMED

10